**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

**Lubbock Division**

| | |
|---|---|
| FLINT AVENUE, LLC, | |
| *Plaintiff*, | |
| v. | CASE NO: 5:24-cv-130-C |
| U.S. DEPARTMENT OF LABOR; JULIE SU, Acting Secretary, U.S. Department of Labor, in her official capacity; JESSICA LOOMAN, Administrator, Wage and Hour Division, U.S. Department of Labor, in her official capacity, | |
| *Defendants*. | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's November 4, 2024 Order (ECF 59), Plaintiff Flint Avenue, LLC,
files this supplementary brief regarding the effects that *Mayfield v. DOL*, 117 F.4th 611 (5th Cir.
2024), may have on the issues to be decided here.

*Mayfield* addressed a broad challenge to a DOL's 2019 Salary Rule and does not answer
Plaintiff's narrower claim challenging the 2024 Final Rule's specific salary levels. The plaintiff in
*Mayfield* argued that "DOL lacks, and has always lacked, the authority to define the EAP
Exemption in terms of salary level." *Id.* at 615. The Fifth Circuit held that DOL could use salary
level as a "reasonable proxy" to help it define or delimit employment in a bona fide EAP capacity.
*Id.* at 618. *Mayfield* resolves Plaintiff's claims here that DOL lacks authority to use *any* salary

level to define the EAP Exemption and that such authority violates the nondelegation doctrine.[1] The plaintiff in *Mayfield*, however, "d[id] not argue that DOL lacks the authority to raise the minimum salary, nor d[id] he maintain that the particular salary level DOL chose is invalid." *Id.* at 615. The decision therefore does not address those issues and hence does not control Plaintiff's additional claim in this case that the Final Rule's specific increases to the salary level exceed statutory authority. Indeed, the Eastern District of Texas recently applied *Mayfield* to hold that the Final Rule's changes to the salary level "make salary predominate over duties for millions of employees," and thus "exceed the Department's authority to define and delimit the relevant terms" in the EAP Exemption. *Texas v. DOL*, No. 4:24-cv-499-SDJ, slip op. at 39 (E.D. Tex. Nov. 15, 2024), attached as Exhibit 1. This Court should draw the same conclusion.[2]

DOL mischaracterizes *Mayfield* by asserting that "the minimum salary level *itself* reflects, 'in part, what it means to work in an executive, administrative, or professional capacity[.]'" ECF 58 at 10 (quoting *Mayfield*, 117 F.4th at 618) (emphasis added). That's wrong. The Fifth Circuit held that DOL's authority to define and delimit the EAP Exemption's operative terms may include, the use of a minimum salary level as a "proxy" characteristic. *Mayfield*, 117 F.4th at 618–19. However, DOL's authority to use proxy characteristics "is not unbounded" because "[t]he words 'executive,' 'administrative,' and 'professional' each have meaning" and "[t]hat meaning both guides and limits [DOL's] power to 'define[] and delimit[]' them." *Id.* at 618–619, 621. Thus, while "DOL can enact [salary] rules that … impose *some* limitations" on the scope of the terms in

---

[1] Plaintiff preserved these claims for appeal in earlier briefing and does not repeat them here.

[2] The Eastern District of Texas's vacatur of the Final Rule does not moot this case. "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189, (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). That is not the case where DOL may appeal, and a reviewing court may reinstate the challenged regulation.

the EAP Exemption, it cannot "enact rules that replace or swallow the meaning those terms have." *Id.* at 621 (emphasis in original). That impermissible result occurs when the use of salary level as a proxy "frequently yields different results than the characteristic Congress initially chose" because "then use of the proxy is not so much defining and delimiting the original statutory terms as replacing them." *Id.* at 619.

The obvious question is what frequency of different results might cause a proxy characteristic like salary level to inappropriately replace the Act's statutory terms, *i.e.*, being employed in a bona fide EAP capacity. *See* 29 U.S.C. § 213(a)(1). DOL considered and answered this question when crafting its earliest salary rules. Since 1949, DOL has maintained that it must deliberately set a low salary threshold that "screen[s] out the obviously nonexempt employees," an "overwhelming majority of" whom "would also not qualify under [the duties test.]" U.S. Dep't of Labor, *Report and Recommendations on Proposed Revisions of Regulations, Part 541*, Harry Weiss, Presiding Officer 8 (June 30, 1949) ("Weiss Report"). That means the salary test may not "effectively displace[] the duties-based inquiry required by the FLSA's text." *Texas,* slip op. at 4.

DOL's prior salary rules, including the 2019 Salary Rule that *Mayfield* upheld, followed the Weiss Report's conclusion that job duties are the most important determinate of EAP status and deliberately kept the salary threshold low to avoid disqualifying significant numbers of workers who perform EAP duties.[3] *See, e.g.,* 84 Fed. Reg. 51,230, 51,241 (Sept. 27, 2019) (citing Weiss Report at 8). Significant numbers of such disqualifications would mean use of the proxy

---

[3] A "general applicability" salary level must be low to serve as an effective proxy for EAP employment because it applies to "many thousands of different situations throughout the country" and thus must account for the fact that "salaries vary, industry by industry, and in different parts of the country, and it undoubtedly occurs that an employee may have a high order of responsibility without a commensurate salary." *Weiss Report* at 9, 11. "Consideration must also be given to the fact that [EAP employees] in many of the smaller establishments" like Flint Avenue "are not as well paid as [EAP employees] employed by larger enterprises." *Id.* at 14.

characteristic "frequently yields different results" and thus would exceed DOL's statutory authority. *See Mayfield*, 117 F.4th at 619. That is precisely what the 2024 Final Rule does. It departs from DOL's longstanding approach by raising the salary threshold to an excessively high level that excludes millions of employees who currently and by job duties qualify for the EAP Exemption. The Final Rule thus does not use salary as a reasonable proxy as *Mayfield* approved, but rather as an improper replacement for the bona fide capacity in which workers are employed. *Texas*, slip op. at 44.

To be sure, as DOL notes, "*every* salary-level update … results in some number of workers who were previously exempt becoming nonexempt based on their salary." ECF 58 at 11. But the actual number of disqualifications matters. As does the amount of time that passed between the updates. *Mayfield* does not change the fact that job duties remain the most important determinate of whether someone is employed in an EAP capacity. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 67 (2023) (Kavanaugh, J., dissenting) ("The Act focuses on whether the employee performs [EAP] duties, not how much an employee is paid or how an employee is paid."); *Walling v. Yeakley*, 140 F.2d 830, 832 (10th Cir. 1944), *cited approvingly* in *Mayfield*, 117 F.4th at 622 ("Obviously, the most pertinent test for determining whether one is a bona fide [EAP employee] is the duties which he performs."); *Nevada v. DOL.*, 275 F. Supp. 3d 795, 807 (E.D. Tex. 2017). Accordingly, a salary proxy that results in large scale disqualification of employees who perform EAP duties "frequently yields different results than the characteristic Congress initially chose," and is thus unlawful. *See Mayfield*, 117 F.4th at 619; *see also* 84 Fed. Reg. at 51,238 (Conceding that DOL cannot set the salary level so high that it would "disqualify any substantial number of bona fide executive, administrative, and professional employees from exemption.") (cleaned up).

A salary rule that significantly increases the number of disqualifications in a short period

of time signals that the proxy characteristic is replacing the statutory terms. The 2004 Salary Rule updated the salary level for the first time in three decades and reclassified only approximately 1.3 million workers. 69 Fed. Reg. 22,122 (Apr. 23, 2004). The 2019 Salary Rule upheld in *Mayfield* updated the salary level successfully for the first time in 15 years and reclassified approximately 1.2 million workers. 84 Fed. Reg. 51,242. By contrast, the unlawful 2016 Salary Rule attempted to update the salary level for the first time in 12 years and reclassified approximately 4 million workers. *Nevada*, 275 F. Supp. 3d at 806. That rule was struck down because it "effectively eliminate[d]" consideration of whether an employee worked in a "bona fide executive, administrative, or professional capacity[.]" *Id.* at 807; *accord Mayfield*, 117 F.4th at 619 (DOL would act unlawfully if "use of the proxy is not so much defining and delimiting the original statutory terms as replacing them").

Like the 2016 Salary Rule struck down in *Nevada*, the Final Rule here would disqualify four million employees from the EAP exemption,[4] even though neither their duties nor the capacities in which they are employed change. 89 Fed. Reg. 32,842, 32,934 & Table 25 (Apr. 26, 2024). And it does so as a *5*-year update. Its annual salary threshold of $58,656 is therefore an even more inappropriate proxy for EAP employment than the 12-year update struck down in *Nevada.*

---

[4] DOL attempts to downplay this figure by noting that approximately one million of the four million disqualified EAP employees are already excluded by the interim salary threshold that took effect on July 1. ECF 58 at 11 n.1. DOL may not minimize the effect of its salary rules by breaking down their full effect into the multiple interim thresholds. Had the 2016 Rule featured a similar interim threshold as the Final Rule, some portion of the four million employees disqualified by that rule would also have been attributed to the interim level. But that would not have changed the 2016 Rule's full effect for the purpose of compliance with the FLSA. The full four million employees disqualified by the Final Rule is the appropriate figure for an apples-to-apples comparison between the Final Rule and the 2016 Rule, which was held to be unlawful.

The Final Rule's salary threshold effectively displaces the duties test, which DOL has long maintained is not permissible. 84 Fed. Reg. 51,238; *see also* Weiss Report at 8. As the Eastern District of Texas found based on DOL's figures, an annual salary level of $58,656 "will render nonexempt at least 2 of every 5 employees who meet the duties test," *Texas,* slip op. at 45 (citing 89 Fed. Reg. 32,880). "A salary level set that high does not further the purpose of the [FLSA], and is inconsistent with the salary level test's useful, but limited, role in defining the EAP exemption." 84 Fed. Reg. 51,238. As *Mayfield* warned, DOL cannot use a proxy, here salary level, to define or delimit eligibility for the EAP Exemption when that proxy "frequently yields different results than the characteristic Congress initially chose," *i.e.*, duties. 117 F.4th at 619.

The same is true of the Final Rule's interim salary level that came into effect in July 2024. That interim increase from $35,568 to $43,888 annually excludes "approximately 1 million employees," 89 Fed. Reg. 32,843, about the same number excluded by DOL's 2004 and 2019 updates. But those prior updates accounted for much longer periods, and they directly responded to significant increases to the federal minimum wage that occurred during those periods. *See Texas,* slip op. at 40–41. The 2004 update was the first in 29 years, during which Congress raised the minimum wage multiple times to more than twice its 1975 level. *Id.* at 40. The 2019 update (which took effect in January 2020) was the first in 15 years, during which Congress raised the minimum wage by about 40 percent. *Id.* at 41. The exclusions of approximately 1 million employees by the 2004 and 2019 salary levels were each justified by the long passage of time since the last update and significant increases to the federal minimum wage. By contrast, the minimum wage did not change during the short 4.5-year window for which the Final Rule's interim salary level serves as an update. Further, as the court in *Texas* estimated based on DOL's incomplete figures, the interim level would exclude "at least a third" of employees who meet the duties test. *Texas,* slip op. at 42.

6

This represents a three-fold increase in the historical 10 percent exclusion that DOL previously found to be acceptable when using salary as proxy for EAP status. *Id.* at 44. As such, the interim salary level no longer merely screens out obviously nonexempt employees but rather it has effectively displaced the duties test for a significant percentage of otherwise EAP-exempt employees. *Id.* (citing *Mayfield*, 117 F.4th at 621).

Finally, DOL's extrapolations based the 1975 salary levels for the long- and short tests fails to establish the Final Rule's $58,656 annual salary threshold as a reasonable proxy. *See* ECF 58 at 10–11. DOL historically determined that salary levels for the long and short tests should be set low so that "no more than about 10 percent of those in the lowest-wage region, or in the smallest size establishment group, or in the smallest-sized city group, or in the lowest-wage industry of each of the categories would fail to meet the tests." U.S. Dep't of Labor, *Report and Recommendations on Proposed Revision of Regulations*, *Part 541*, Harry S. Kantor, Presiding Officer 6–7 (Mar. 3, 1958) ("Kantor Report"). DOL's 1958, 1963, and 1970 salary rules followed this 10-percent approach. *See* 84 Fed. Reg. 51,236. DOL replaced the two-tiered test structure with a single salary level in 2004 and accounted for this change by using the 20th percentile for salaried employees in the lowest-income region and industry, instead of the Kantor Report's 10th percentile. *See* 69 Fed. Reg. 22,122, 22,168–69 & Table 3. The 2019 Salary Rule likewise uses the 20th percentile approach. The Final Rule's 35th percentile approach marks a dramatic departure from precedent. *See* 89 Fed. Reg. 32,842.

DOL's attempt in the Final Rule and its reply brief to justify that departure with the 1975 salary levels for the long and short tests fails because those are non-precedential outliers that were the product of unprecedently high inflation. *See* ECF 58 at 11 (citing 89 Fed. Reg. 32,873). In 1975, DOL said that "rapid increase in the cost of living … justifie[d] an interim increase" in salary

thresholds. 40 Fed. Reg. 7091, 7091 (Feb. 19, 1975). It departed from the 10th percentile approach used in DOL's 1958, 1963, and 1970 salary rules and instead set "interim rates" based on the Consumer Price Index "to eliminate any inflationary impact." *Id.* DOL explicitly said the 1975 increase was to be "interim … pending the completion and analysis of a study"[5] and emphasized that it was "not … to be considered a precedent." *Id.* at 7091–92. DOL's attempt to use the non-precedential, inflation-distorted 1975 interim rates as baselines to set the Final Rule's salary level is therefore wholly inappropriate and self-contradictory. *See* ECF 58 at 11 (citing 89 Fed. Reg. 32,873).

Rather, in determining whether or by how much DOL may increase the salary level, the proper baseline for comparison is the prior $35,568 annual threshold under the 2019 Rule. The Final Rule would increase the salary threshold by roughly 65 percent, an increase of approximately 11 percent per year. By contrast, the unlawful 2016 Rule's annual salary threshold of $47,476 represented an increase of 101 percent over a twelve-year span compared to the $23,660 threshold set in 2004, an increase of approximately 6 percent per year.[6] The Final Rule raises the salary level even faster than the unlawful 2016 Rule and is thus an even more inappropriate proxy for the capacity in which workers are employed.

At bottom, *Mayfield* approved the 2019 Rule's approach of setting a low salary threshold for use as a reasonable proxy to screen out obviously nonexempt employees. It does not support the Final Rule's new approach of using a high salary threshold to exclude millions of workers who

---

[5] DOL never completed the salary-updating process it began in 1975, and the interim level remained in place for nearly three decades. *See Texas*, slip op. at 9–10.

[6] Average annual inflation was approximately 2 percent between 2004 and 2016 and was approximately 4 percent between 2019 and 2024. *See* Bureau of Labor Statistics, CPI calculator, https://data.bls.gov/cgi-bin/cpicalc.pl. Thus, even accounting for inflation, the Final Rule increases the salary level much faster than the unlawful 2016 Salary Rule.

are currently employed in a bona fide executive, administrative, or professional capacity. The Eastern District of Texas already held that the Final Rule is unlawful under *Mayfield*, and there is no reason for this Court to draw a different conclusion.


November 18, 2024                                   Respectfully Submitted

                                                   */s/ Sheng Li*

                                                   Sheng Li, *pro hac vice*
                                                   John Vecchione, *pro hac vice*
                                                   NEW CIVIL LIBERTIES ALLIANCE
                                                   4250 N. Fairfax Dr., Ste. 300
                                                   Arlington, VA 22203
                                                   (202) 869-5210
                                                   sheng.li@ncla.legal

                                                   Karen Cook
                                                   KAREN COOK PLLC
                                                   (214) 593-6429
                                                   karen@karencooklaw.com
                                                   S. Michael McColloch
                                                   S. MICHAEL MCCOLLOCH PLLC
                                                   6060 N. Central Expressway, Suite 500
                                                   Dallas, Texas 75206
                                                   (214) 643-6055
                                                   smm@mccolloch-law.com

                                                   Andrew Beck
                                                   Kirsten Beck
                                                   BECK LAW FIRM, PLLC
                                                   4910 Lakeridge Drive
                                                   Lubbock, Texas 79424
                                                   Tel: (806) 702-7909
                                                   andrew@becklawfirm.net
                                                   kristen@becklawfirm.net
                                                   *Attorneys for* Plaintiff

9

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024, an electronic copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Sheng Li*